UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN SULLIVAN,

    Appellant,

v.

TIMOTHY J. MILLER,

    Appellee.

Case No. 24-cv-12837

Hon. Mark A. Goldsmith

_____/

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S JUDGMENT**

Before the Court is the appeal of the bankruptcy court's entry of judgment in favor of the Chapter 7 Trustee after a multi-day trial, avoiding the transfer of real property from debtor Jason Wylie to his mother, Kathleen Sullivan, as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) and awarding the property to the bankruptcy estate pursuant to § 550(a). For the reasons stated below, and those stated in the bankruptcy court's opinion and the appellee brief, the Court affirms the bankruptcy court's decision.[1]

**I. BACKGROUND**

This appeal arises from an adversary proceeding brought by Appellee, Chapter 7 trustee, Timothy J. Miller, to avoid and recover the transfer of real property from debtor Jason Wylie to Appellant, his mother, Kathleen Sullivan.

Prior to January 17, 2011, Sullivan owned the real property at primary issue in this appeal, located at 6401 Mast, Dexter, Michigan. On January 17, 2011, Sullivan transferred 6401 Mast to

---

[1] Appellant Kathleen Sullivan's request for oral argument is denied because oral argument will not aid the Court's decisional process. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The matter will be decided based on the parties' briefing, which includes Sullivan's brief (Dkt. 4), the trustee's brief (Dkt. 6), and Sullivan's reply brief (Dkt. 7).

1

her son, Wylie. Bankr. R. at PageID.198–202 (Dkt. 3) On January 27, 2011, Wylie executed a mortgage on 6401 Mast in favor of Sullivan. On June 17, 2014, after the promissory note had been paid off, Sullivan signed a document titled Receipt of Payment in Full, evidencing satisfaction of the promissory note. Id. at PageID.1017. That same day, the parties recorded a discharge of the mortgage on the property that secured the indebtedness of the promissory note, which had been paid off days earlier. Id. at PageID.1018.

On August 19, 2019, Wylie transferred 6401 Mast back to Sullivan, through a document titled Quit Claim Deed In lieu of Foreclosure, id. at PageID.886, even though the mortgage had been discharged and liability released more than five years prior to the transfer. A little over a year later, on August 27, 2020, debtors Wylie and his wife Leah S. Wylie filed a petition under chapter 7 of the Bankruptcy Code. Id. at PageID.922.

Miller, as appointed chapter 7 trustee in Wylie's case, sought to avoid the transfer under 11 U.S.C. § 548(a)(1)(B) as constructively fraudulent, and to recover 6401 Mast for the benefit of the bankruptcy estate 11 U.S.C. §§ 550 and 551. Id. at PageID.820–824. The bankruptcy court deemed the following elements established for purposes of trial: (i) the transfer was a "transfer of an interest of the debtor," (ii) "the transfer was made…on or within 2 years before the date of the filing of the petition," and (iii) the debtors were both "insolvent on the date that the transfer was made." Id. at PageID.751 (punctuation modified). The sole issue at trial was whether the Wylie received "reasonably equivalent value" in exchange for the transfer, pursuant to 11 U.S.C. § 548(a)(1)(B). Id. at PageID.752.

The bankruptcy court found that the transfer was part of a larger transaction between Wylie and Sullivan. Despite viewing the transfer in this manner, the court still found the transfer avoidable as constructively fraudulent. The larger transaction consisted of the August 2019

transfers from Wylie to Sullivan of (i) 6401 Mast, (ii) 6600 Gregory Road, Dexter, Michigan, and (iii) 7575 N. Territorial Road, Dexter, Michigan in exchange for a release of liability stemming from promissory notes and related mortgages associated with the three properties.[2] Id. at PageID.753. The release of debts associated with these three properties is evidenced by a document titled "Mutual Release in Full." Id. at PageID.753, 754. By that agreement, Sullivan released debt owed by Wylie in exchange for return of the three properties.[3] Id. at 754.

Sullivan urged the bankruptcy court to ignore the plain language of the limiting language in the mutual release and instead treat the mutual release as a broad general release that would extinguish all debts Wylie owed to Sullivan. Among the other debts that Sullivan urged the bankruptcy court to include was a (i) 2014 business loan from Sullivan in the amount of $200,000 to Wylie's business, Wylie's Rental, as evidenced by a certain $200,000 promissory note, id. at PageID.93, and (ii) $10,000, which Sullivan at trial claimed for the first time, was a portion of the purchase price left unpaid from the 2014 sale of 6600 Gregory, id. at PageID.699.

The bankruptcy court held a multi-day bench trial, during which it received testimonial and documentary evidence from several witnesses, including Sullivan, Wylie, Leah Wylie (Jason Wylie's spouse), and their attorney, Thomas Morris, which for the most part it did not deem to be credible. The bankruptcy court ultimately found that Sullivan did not provide reasonably

---

[2] As noted above, the promissory note and mortgage related to 6401 Mast were released and discharged five years earlier, despite the language in the deed "in lieu of foreclosure" and the release. All three deeds transferring these properties were entitled "Deed in Lieu of Foreclosure", but the transfer of 6401 Mast was not in leu of foreclosure. There was no mortgage for Sullivan to foreclose upon, as it was discharged five years earlier.

[3] As noted above, the promissory note and mortgage related to 6401 Mast were released and discharged five years earlier, despite the language in the deed in lieu of foreclosure and the release.

equivalent value for the transfer and avoided and preserved the transfer for the benefit of the bankruptcy estate. Id. at PageID.806, 807.

Specifically at issue in this appeal, the bankruptcy court found that Wylie was not personally liable on a business debt, the $200,000 Wylie's Rental note, Id. at PageID.766–774, and on money that had already been paid, the $10,000.00 downpayment for the 2014 sale of 6600 Gregory. Id. at PageID.764–766. The bankruptcy court also found that the mutual release was limited to its plain language, which specifically released liability on three secured promissory notes (one of which had already been released in 2014). Id. at PageID.782–787. As the bankruptcy court found that the value of the three properties transferred was substantially higher than the debt that was released,[4] the court determined the transfer was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) and ordered the property returned to the estate under § 550(a). Id. at PageID.808–809.

Sullivan now appeals, arguing that the bankruptcy court erred in its interpretation of the evidence, the scope of the release, and the remedy granted.

## II. ANALYSIS[5]

**A. The $200,000 "Wylie's Rental" Note**

Sullivan argues that Wylie was personally liable on a business debt, the Wylie's rental note, and that her release of his liability formed part of the consideration she provided in exchange for transfer. App. Br. at 16–24. She challenges the bankruptcy court's reading of the note and its rejection of extrinsic testimony. Id. at 24.

---

[4] The bankruptcy court found that the three properties were worth $893,000.00 at the time of the transfer, whereas the debt released was only $737,516.12. See Bankr. R. at PageID.788.
[5] The bankruptcy court's legal conclusions are reviewed de novo, factual findings for clear error, and decisions regarding equitable remedies under § 550 are reviewed for abuse of discretion. In re Batie, 995 F.2d 85, 88 (6th Cir. 1993); In re Nowak, 586 F.3d 450, 454 (6th Cir. 2009).

4

Her argument is unpersuasive. The bankruptcy court carefully reviewed the language of the note and reasonably concluded that it imposed no personal liability on Wylie. Sullivan's suggestion that Wylie intended personal liability is not supported by the document's plain terms. Notably, the Wylie's rental note was also absent from the mutual release.

Sullivan further asks this Court to overturn the bankruptcy court's credibility determinations concerning her testimony and the testimony of Wylie and their attorney. This Court declines to do so. The bankruptcy court, as the trier of fact, was in the best position to assess demeanor and tone. As the United States Supreme Court has cautioned, such credibility determinations are entitled to great deference in applying the "clearly erroneous" standard of review. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

Sullivan, for the first time on appeal, raised a new "oral guaranty" theory. App. Br. at 25–26. A court reviewing a bankruptcy court's decision generally cannot consider arguments raised for the first time on appeal. In re Cannon, 277 F.3d 838, 848 (6th Cir. 2002); see also Brown v. United States, 545 F. App'x 435, 438 (6th Cir. 2013) (explaining that "deviations" from this general rule "are [only] permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice" (punctuation modified)). Even assuming this issue was preserved, the record lacks evidence of a valid oral contract of guaranty under applicable law, and certainly no enforceable obligation sufficient to defeat the Trustee's showing under § 548(a)(1)(B). The bankruptcy court committed no error in finding the limiting language in the Mutual Release did not release the debt of a third party, the business borrower on the Wylie's rental note. As such,

not only did the debtor have no personal liability under the Wylie's rental note, but even if he did, it was not released in the Mutual Release.

**B. The $10,000 Gregory Downpayment**

Sullivan asserted at trial for the first time, that she did not receive the $10,000 referenced in a closing statement associated with the 2014 sale of 6600 Gregory, and that this amount should have counted toward the value she gave in exchange for the property. The bankruptcy court rejected this testimony, relying instead on the plain language of the closing statement, which evidenced that this money had been paid. Bankr. R. at PageID.764–766.

Sullivan's insistence that the trustee bore the burden of disproving her testimony is misplaced.[6] The bankruptcy court heard her evidence, weighed it, and found it not credible. This was not clear error. Sullivan could have introduced other documentary evidence, such as bank records but chose not to. The closing statement reflects that the funds were paid, and Wylie could not persuasively show otherwise. The bankruptcy court was entitled to credit the contemporaneous documents over self-serving oral testimony.

**C. Scope of the Mutual Release in Full**

Sullivan urges the Court to ignore the plain language of the Mutual Release and instead substantially broaden the Mutual Release to encompass all debt Wylie owed her, including the $200,000 Wylie's rental note and the $10,000 downpayment. App. Br. at 24–44. She requests a de novo interpretation of the document to support her "global release" theory. See Id. at 11.

This argument fails. The plain language of the mutual release specifically lists only certain promissory notes and related mortgages that were to be released, and nothing more. Bankr. R. at

---

[6] Sullivan's failure to produce bank statements proving the $10,000 was not paid was only one of five different reasons the bankruptcy court found that Wylie did not owe the $10,000 in question. See Bankr. R. at PageID.765, 766.

6

PageID.782–787. The bankruptcy court rightly concluded that the indebtedness related to 6401 Mast, 6600 Gregory Road, and 7575 N. Territorial Road was all that was released. See id. The bankruptcy court rejected, and did not find credible, Sullivan's argument that the mutual release was broad enough to release all obligations between the parties. Additionally, the mutual release contained an integration clause, id. at PageID.783, foreclosing these arguments. BRB Printing, Inc. v Buchanan, 878 F. Supp. 1049, 1052 (E.D. Mich. 1995) ("It is well-established that where a contract is clear and unambiguous, parole evidence of negotiations cannot be admitted to vary the contract.").

The Court finds no clear error with the bankruptcy court's findings. The bankruptcy court's interpretation was well grounded and is affirmed.

### D. Reasonably Equivalent Value

Sullivan's argues she gave "reasonably equivalent value" for the 6401 Mast and that the Trustee failed to meet his burden under § 548(a)(1)(B). App. Br. at 54. This is directly contradicted by the record. The Bankruptcy Court found, based on testimony and exhibits, that the value of the debts released by Sullivan amounted to well below the value of the properties returned. Bankr. R. at PageID.788. Sullivan's inflated calculations included obligations for which Wylie was not personally liable or which had already been satisfied. The Court finds no clear error in these factual determinations. Based on those findings, the Court agrees with the Bankruptcy Court's conclusion that Sullivan failed to give reasonably equivalent value in exchange for 6401 Mast.

### E. The Remedy Under § 550(a)

Finally, Sullivan argues that, even if the transfer was avoidable, the bankruptcy court abused its discretion by awarding the entire 6401 Mast property—worth $370,000—rather than

7

limiting recovery to the $155,483.88 shortfall between the value of the properties transferred and the debt released. App. Br. at 55–58.

The Court rejects this argument. Section 550(a) expressly authorizes the trustee to recover the property or its value. The trustee pleaded for the return of the property, and the bankruptcy court granted that relief. It was within the bankruptcy court's discretion to do so. See In re Bremer, 408 B.R. 355 (10th Cir. BAP (Colo) 2009), aff'd sub nom. In re Trout, 609 F.3d 1106 (10th Cir. 2010). Sullivan never objected to this form of remedy during trial and cannot raise that objection for the first time on appeal. Moreover, no inequity arises here: the trustee recovers an asset of which the estate was fraudulently deprived -- not a windfall.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment is **AFFIRMED**.

Dated: August 22, 2025  　　　　　　　　　　s/Mark A. Goldsmith  
Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH  
　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2025.

　　　　　　　　　　　　　　　　　　　　s/Joseph Heacox  
　　　　　　　　　　　　　　　　　　　　JOSEPH HEACOX  
　　　　　　　　　　　　　　　　　　　　Case Manager